I'm not sure if I'm pronouncing that right. All right, let's just give them a second to clear out just so you won't be distracted by background noise. All right, so Mr. Adams, you have reserved two minutes for rebuttal. Before you even start, just give me the pronunciation of, is it Youngpoong? Youngpoong. Youngpoong. Yes. Got it right. May it please the Court, William Adams for Petal Point, Kevin Hom and Janet Ha, the respondents in the 1782 proceeding below. In granting the application below, the district court applied the wrong legal standard to two of the four intel factors, thus permitting discovery without regard to whether the information that was being sought was within the Korean court's jurisdictional reach and whether the applicant is attempting to circumvent Korean discovery restrictions. I'd like to start with the first intel factor, which concerns the jurisdictional reach of the Korean court. The district court erroneously considered only whether the target of the subpoena was a participant in the foreign proceeding or was holding the participant's documents derivatively. That's simply too narrow under the Supreme Court's decision in intel, this Court's decisions as well, and the Third Circuit's decision in SPS. The first factor considers whether the requested discovery is within the foreign court's jurisdictional reach. In that circumstance, there's less of a need for Section 1782 discovery. The focus is on the foreign tribunal's ability to control that evidence and order its production, not on who is the nominal target of the subpoena. The district court erred as a matter of law in confining the inquiry to whether the Your argument is the Korean court could control the documents that were in possession of the respondents here in the United States? Our position is yes, Your Honor. The Korean court has the authority to compel the production of documents from the Did the Korean court have jurisdiction over the respondents? The Korean court has jurisdiction over Korea Zinc and the Korea Zinc directors, and through them My question wasn't about Korea Zinc, my question was about the three respondents. Did the court have jurisdiction over Petal Point, Janet Ha, and Kevin Ha? The Korean court has not direct jurisdiction over them, Your Honor, but it has the ability to compel Korea Zinc to produce documents that Petal Point and the respondents  So the answer to that question is no, they didn't have jurisdiction over the Petal Point and the individuals, but you think the Korea court could somehow force Korea Zinc to force them to produce the documents? Yes, Your Honor, and I think the difference we're saying is material. So the question for the district court to say I don't buy it? Yes, Your Honor, because this is a legal issue. We're talking about the issue here is whether the information that's being sought is within the jurisdictional reach of the Korean court, and our expert says at A-267, 271, and A-546 that the nature of Korean procedure allows for the discovery of subsidiaries' documents through a parent company that's a party to the proceeding. But at the very, at the very least, all of the relevant materials under the Korean business judgment rule are discoverable from participants in the Korean proceeding, because under Korean law... Might there not be some documents that are solely in the possession of Petal Point and its officers here in New York? To the extent there are, Your Honor, I would say that those are discoverable through Korea Zinc or through the Korea Zinc directors. If there's anything that was not reviewed and is not in the possession also of the Korea Zinc or the Korean Zinc directors. But remember here, we're looking to see whether the twin aims of the statute, whether discovery is an efficient means of providing assistance to the foreign litigants and the foreign tribunal, and whether it's producing an example that we would want to reciprocate around the world. You are looking at the aims of the statute, the point of the statute. Does it not make sense that a party in a foreign proceeding can come here to get documents that are here in the possession of someone here who is not directly subject to jurisdiction in Korea to help facilitate the proceedings in Korea? To me, that's the whole point of the statute is this kind of case. But, Your Honor, even if that were true, that's a decision for the district court to make in the first instance applying the correct legal standard. The district court did not respectfully engage in that inquiry. I guess I don't understand why Intel says that. I mean, it seems to me Intel is much more equivocal than you would suggest. Intel talks about the first Intel factor is focused really only on whether the evidence is sought from a nonparticipant in the matter who may be outside the foreign tribunal's jurisdictional reach. I mean, if it's equivocal, if it's not clear, it seems to me that factor lines up in favor of your adversary. No, Your Honor. The first factor from Intel looks at the jurisdictional reach to determine. So if the party, if the target is a participant in the foreign proceeding, then it may and then it may likely be within the jurisdiction. It is in the jurisdictional reach of that court. We've got to basically do what the district court has to do, which is a firm discussion and determination as to what is the reach of a Korean court. And I don't think that's what Intel's first factor asks them to do. I think. Or us to do. Respectfully, Your Honor, I would direct you to the Third Circuit's decision in SPS. It's cited in the great brief at page 6. It's 110 F. 4th, 586. And at 592, it specifically rejects my, the district court's view here, which says, and then it says, quote, the focus of Intel's first factor is not simply whether the party from whom discovery is sought is a participant in the foreign proceedings. And then it goes on to quote Intel, explaining that Intel looked at the jurisdictional reach of the Korean proceeding. And here, the district court just simply didn't engage in that analysis. No, no. The district court concluded that Petal Point might independently own documents that Korea Zinc doesn't have. And that it's not clear how the kind of information that Petal Point has would be available outside of a deposition. So it seems to me that the district court is concluding that this is not going to be simply a matter of going to Korea Zinc to get all this. Well, the district court did conclude that there, determined or I guess accepted that there would be documents that were owned by Petal Point that might not be directly within Korea Zinc's possession. But it did not conclude that it could, that those were outside the jurisdictional reach of the Korean court. It didn't get to that inquiry. It only looked, and this is on, this is on SBA 20. It only looked to whether the target was a participant in the foreign proceeding or the documents were held derivatively. And to the extent these documents are not obtainable in the Korean proceeding, that's because of Korean discovery restrictions that, my friends, that Yong-Hoon is trying to circumvent. And that's the third. And that's the third. And that's the third factor. It seems to me you're kind of complaining of the first and third, but I'll give you a few minutes to get to the third because that's another important point. Thank you. Thank you, Your Honor. I appreciate that. Well, I think they go together. Obviously, the intel factors are not intended to be a mechanical exercise. And so I think there is some sort of overlap and, you know, certainly a relationship between the factors. And they're all in service of the two aims of the statute, and in particular whether they're trying to do, whether the discovery will provide an efficient means to assist the tribunal. But on the third factor, the district court had an independent error in requiring authoritative proof as to the Korean privileges. Certainly under the second intel factor, which is the receptiveness of the foreign court to U.S. assistance, that requires authoritative proof. There's no dispute about that. But that inquiry is materially different than what's going on in the third factor. The second factor looks to sort of requires a clear statement that notwithstanding Congress's determination that we want to be, provide this discovery, that a foreign jurisdiction has said, we do not want your help. That requires a clear statement. The third factor concerns just general rules and legal standards of foreign discovery restrictions. That's a standard inquiry that federal courts conduct all the time. And in that circumstance, it doesn't make sense to talk about proof. Proof is an evidentiary requirement. Here On the one hand, with respect to the second factor, your argument is they can get the stuff in Korea. And then here, on this factor, you're arguing that they can't get the stuff in Korea and they're trying to circumvent the rules. It seems to be inconsistent. No, Your Honor. It's not inconsistent. The evidence is accessible and available through and within the jurisdictional reach of the Korean Tribunal. That's factor one. That's a permissible consideration. The factor three analysis is whether, and that doesn't mean you can actually, they're going to get the documents. That just means that within the jurisdictional reach, the Korean court could order their production. There are privilege, you know, there are restrictions on discovery. Certainly, Korea is a civil law, a civil law jurisdiction. And those structural limitations do have restrictions that make discovery more difficult there than here. And that's what the third factor is looking at. And in particular, it considers the privileges that our expert laid out in detail and also explained why specific document requests implicated those privileges. The third factor is really looking to see whether this request is being made in bad faith, right? That's what it's teasing out, Your Honor. Okay. But it seems to me your own expert is equivocal on this subject. Your own expert says that she couldn't determine with certainty that any specific request in the document subpoena called for privileged documents or documents that would be, you know, skirting Korean law. And certainty or authoritative proof, which I think are very similar terms, is not required at this stage because there's no comparison. Your Honor, as I'm saying, it seems to me your expert makes it pretty clear that this is not going to be bad faith if it's not determined what the reach of the Korean privileges are. What our expert did, though, at pages 277. You say the district court should have done a better job than your expert as to what the state of Korean law is? No, Your Honor. Our expert identified the relevant privileges and mapped them onto the specific discovery requests. What our expert could not do is say that, you know, document X, Y, or Z was, you know, subject to that privilege because we weren't at the discovery process yet. This is at a threshold motion to quash the subpoena stage. And so the district court essentially required that level of certainty, document by document certainty, you know, at a stage that they just weren't there. So what's the evidence of bad faith, I guess, is the question. Well, it is evidence of — this is evidence of bad faith, Your Honor, because, first off, the district court just — when you're here on a legal error of authoritative proof, whether the district court ultimately agrees with us or not, that's — for the district court. The district court might ultimately conclude that the factors balance out the same way when it applies with the correct legal standard on Factor I and the correct legal standard on Factor II. But the district court held our client to too high of a burden to require authoritative proof as to the meaning and application of privileges here. So the district court didn't even get to the inquiry that we're really talking about. And so we're — But, I mean, I guess we could decide that here now, right, that even if the district court sort of mouthed the words authoritative proof and that's not the right standard, there's still nothing in this record that would suggest bad faith. We could do that, right? You could. But my argument to you is that there is evidence in the record that this error is not harmless. It's prejudicial. What's the best evidence of bad faith on the part of the requesting party? Sure. I don't think, Your Honor, that the standard requires independent evidence of bad faith. What it's trying to do is show that if you're circumventing — The third intel factor is about whether or not this is all an exercise to harass and circumvent Korean law. In other words, bad faith. Correct. Correct. I'm saying — What is the record evidence that supports that factor being in your favor? Sure, Your Honor. Well, the evidence of the circumvention, which is evidence of bad faith, is the evidence of the discovery restrictions on 277 to 282 of our — I mean, that's our initial experts' report. And that shows how these requests map on to privileges that are — for privileges from production under Korean law. So they could have gone to Korea. You know, they don't have to. Obviously, there's no foreign exhaustion — there's no foreign exhaustion requirement. But they could have gone to — they could have gone to Korea, and if they had gone to Korea first, they would encounter these impediments to actually obtaining the documents. There's a — there's these privileges from production. They go through in-camera review through a Korean — a Korean judge, and those are the obstacles. I'd also direct the Court to its decision in Kiobel. Kiobel looked not just to whether there were specific privileges or specific discovery restrictions at issue. It looked to whether the applicant there was circumventing the much more limited discovery restrictions that were available to the Dutch court. More writ large. So this Court — these are not mechanical exercises. This Court has recognized that the district court has, you know, broad discretion in this area, but when it's exercising that — exercising that discretion, it should do so under the correct legal standards.  Well, you've reserved some time for rebuttal. We'll now hear from Mr. Hellman. Thank you. Thank you, and may it please the Court. I'm Matthew Hellman on behalf of the Appellee Young Poon Corporation. I'd like to get right into it because I think there's just two factors in this discretionary analysis that are at issue here today. The district court did not abuse its discretion. Let's start with factor one. The district court applied the very test that my friends on the other side say she should have applied. Namely, she asked whether this information in question is, quote, obtainable in the foreign proceeding, and she found that it was not. That's S.P.A. 20. The reason she found that it was not was that she credited our expert's declaration, which is reprinted at J.A. 431, where our expert concluded that it was neither, quote, practical nor likely that Young Poon could obtain an enforceable order for these — to get this evidence to Korea. The reason our expert found this was double-barreled. One, the expert found that Korea Zinc and — not just Korea Zinc, but Korea Zinc's directors, who are the only parties to that Korean proceeding, were not likely to have these documents. And two, Korean discovery procedures are not of the kind that would typically allow for the discovery that is at issue here. So that's a two-point conclusion from our expert that the district court credited, applying the standard that my friend said she should apply, and concluding that our expert had the better of the argument. That is not an abuse of discretion. That is a heartland call by a district court judge weighing the information that was before her. So — and candidly, I think what my friend on the other side is really saying is that the evidence that we want, in his view, is not relevant to the shareholder derivative suit that is taking place in Korea. The experts in this case, ours and theirs, didn't agree on much in this case. But one thing they both agreed on was that when you're looking at evidence that goes to a derivative suit like this in Korea, a key inquiry is whether or not the directors sufficiently gathered information in order to make their decision. You can't know if they did a good job gathering the information that's out there without getting the information from Pedalpoint, which was the acquiring company that did this transaction. You've got to know what's out there in order to make that assessment. And then just more broadly, I'm sure this Court has seen lots of business judgment cases. Pedalpoint, the New York entities, the American entities here, were the acquiring company. Information from them can show the chronology. It can show concerns. It can show contradictions. There's no admissibility requirement for this evidence. It can be relevant for those reasons as well. And of course, I've maybe left out the fundamental point. Relevance is not a factor one inquiry. As this Court has said, relevance goes to the for-use requirement, which is not being challenged here, one of the statutory factors. Relevance might also be relevant, no pun intended, to the factor four inquiry, going to burdensome, burdensomeness, not challenged here. So I think my friend's factor one argument boils down to a relevance inquiry, which is both wrong on the law and the facts. Now, if there are no questions, let me go to factor three, the privilege standard. The first thing that I'd like to say on that point is my friend's experts, if that's the right way to put it, discussion of the privilege was gossamer thin. I think we've all seen expert declarations. Experts usually say the better view of the law is X, or I conclude X to be the case in my professional judgment. This expert is not saying that. This expert says only there could be a privilege that applies. She couldn't say for certain. And not only that, it wasn't a lack of information that kept her from saying that. The expert had our discovery request for weeks, possibly months, before she rendered her opinion. She was perfectly capable of making an assessment of whether or not, in her judgment, a privilege did apply. The district court judge at SPA 22 goes through the analysis, notes that the other side's expert will not say that it's even more likely than not that a privilege applies, and concludes, quoting this Court's decision in Mattel-Gassell-Shaft — I hope I'm pronouncing that correctly — that it was, quote, far from clear that a privilege applies. Far from clear. That's the Second Circuit, right down the middle from the Mattel-Gassell-Shaft case, which is the leading case in this area. It was not an abuse of discretion for her to conclude, just like that case did, that because it was far from clear that a privilege applied, Factor III favored us, particularly given the aims of the statute, which try very hard not to make a U.S. district court judge an arbiter of foreign law. It's for the Korean courts to determine, should this evidence ever be introduced in Korea, whether or not Korean law, in fact, does apply in some way that prevents or limits its use. In this court, in American courts under 1782, where it's far from clear that a privilege applies, Factor III favors us. Now, I do have to say a word as well about the authoritative proof point, because my friends have made quite a bit of that this morning. The district court didn't make up that standard. She kept on reading in Mattel-Gassell-Shaft, a case from this court, which, when presented, just like this case, with, I'll call it equivocal evidence of a privilege that was far from clear, the court said it would not counsel against 1782 discovery absent authoritative proof of the privilege. So, again, this court was just following – sorry, the district court was just following what the Second Circuit said in Mattel-Gassell-Shaft, which is perfectly in keeping with cases like Alec's partners and many district court cases, all of which, if there's a through line from all of those cases, it is that 1782 is designed to be an expansive, allow-for-discovery kind of procedure, and absent something very clear, exceedingly clear, extraordinarily clear, and certainly not far from clear, it ought not – statements about a foreign privilege or the possibility of a foreign privilege or the Gossamer potential of a foreign privilege ought not be a basis to deny discovery. So unless the court has any further questions, we would ask this court to affirm and find that the district court did not abuse her discretion in ordering the 1782 discovery. There is no stay in effect? There is no stay in effect. In fact, a previous panel of this court rejected my friend's request for a stay. So what's the time? There is no stay in effect. Please. If there is – I mean, what pressure are we under in real time? And does it matter very much if there's no stay in effect? That's right. I'll get – the chronology, as I understand it, is the following. Discovery is ongoing because no stay is in effect. Something like 12,000 documents have been produced to date, a pretty substantial number, but we're not done yet. Depositions will be taking place over the next month or so, and the next big hearing in Korea, I understand, is about two months from now in June. If we sit on the case for two months, it won't matter anymore? There's no stay in place because this court already held that they had not shown a stay was warranted. So – but that is the timeline. And I will say this. The district court is actively overseeing the discovery in this case the way a responsible district court should, and the parties are always free to take disputes – normal 1782 discovery disputes. But as to the legitimacy and the appropriateness of the subpoenas and the doc requests here, you ought to affirm and find that there was no abuse of discretion. Thank you. All right. Thank you, Mr. Hellman. We'll hear from Mr. Adams for two minutes of rebuttal. Thank you, Your Honors. I agree with my friend's discussion of the chronology. We would encourage you not to sit on the case for two months, and it's certainly not moot, given the ongoing discovery and our ability to call – or ability and interest in calling back the documents that have been produced to Young-Koon. None of those documents have actually been submitted to the Korean court. On the first factor, respectfully, the district court did not do what we're asking – it was saying it should have done. The district court – and this is on SBA 20 – said that this court has found that the first intel factors weighs against discovery when the documents sought did not originate with the subject of the Section 1782 application, and the subject held those derivatively as part of the safekeeping or advisory function. Next sentence after the cites. That is not the case here. Then it goes on a little later, saying, accordingly, Petal Point is not a bank or law firm merely holding records for a client. That is not a sufficient inquiry under the first factor. It should look more broadly to whether the documents are accessible and within the jurisdictional reach of the Foreign Tribunal. On the third factor, there really is no – there is no dispute here as to the law and to the scope of the Korean privileges. Our expert explained – put forth and set forth the privileges, and the other side's declaration does not dispute the meaning and scope of them. So this is not a battle of experts as to what the – what the meaning is of Korean law. That could be certainly a concern in some cases, but in this case, it is not. My friend, in discussing Factor 1 and their expert's affidavit, actually acknowledged that this is – the discovery that's sought here is not the type of discovery that's typically available in a Korean proceeding. That is exactly what the third factor looks at, and they're trying to circumvent that process. This Court's decision in Keoghle is on – is directly on point there. And final point, Mattel, the Shaw Shaft, if I'm pronouncing that correctly, does not govern this case. It was a pre-intel decision and was ultimately talking about what became Factor 2, whether – whether a foreign court would reject U.S. judicial assistance. It said that required authoritative proof, but this Court has not yet opined – required authoritative proof for the third factor, and we don't think it should here either. Thank you. All right. Well, thank you both. We will reserve – thank you all. We will reserve decisions.